UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

JAMES WAYNE LAMBDIN and
PHYLLIS JEAN LAMBDIN                              CASE NO. 09-60767

DEBTORS


MAXIE E. HIGGASON, JR, TRUSTEE                    PLAINTIFF

v.                                                ADV. NO. 09-6058

THE CIT GROUP/CONSUMER FINANCE, INC.,             DEFENDANTS
JAMES WAYNE LAMBDIN,
PHYLLIS JEAN LAMBDIN,
21ST MORTGAGE CORPORATION,
FORD CONSUMER FINANCE


**MEMORANDUM OPINION**

This adversary proceeding was commenced by the Trustee's filing of an amended complaint which seeks to avoid the Defendants' liens on James and Phyllis Lambdin's ("Debtors") mobile home and to recover from the Defendants an alleged preferential transfer made by the Debtors (DOC. 44).  Orders granting default judgments have been entered against three of the Defendants: the Debtors, Ford Consumer Finance, and The CIT Group/Consumer Finance, Inc. (DOC. 20, 64, and 72, respectively).  A trial was held on October 26, 2010 to address the validity of Defendant 21st Mortgage Corporation's lien and the alleged preferential transfer.  Having taken this matter under submission, the court hereby issues this memorandum opinion.  This is a core proceeding. *See* 28 U.S.C. §157(b)(2)(F) and (K).

I.

On April 15, 2005, the Debtors entered into a $49,500.00 mortgage loan agreement with The CIT Group/Consumer Finance, Inc. ("The CIT Group") which was secured by a security interest in

a mobile home and a mortgage on real estate located in Mount Vernon, Kentucky. At the time of the agreement, the mobile home and real estate appraised together at $79,000.00, with the amount attributed to the real estate being $15,000.00.

The CIT Group did not perfect its security in the mobile home by having its lien noted on the mobile home's certificate of title. The only lien indicated on the certificate of title belongs to Ford Consumer Finance for the year 1992. According to both the Trustee and 21st Mortgage Corporation (21st), Ford Consumer Finance's lien has been paid off and should have been released. The CIT Group subsequently sold a portion of its portfolio to 21st on July 3, 2008. Although 21st became the holder of the Debtors' note and mortgage, its lien is not noted on the mobile home's certificate of title.

On May 7, 2009, Mrs. Lambdin contacted 21st to request a payoff of the loan. She was quoted a payoff amount of $39,318.16, which she paid to 21st on May 11, 2009. A release of the mortgage was filed with the Rockcastle County Court Clerk's office. Nine days after paying off the mortage, the Debtors filed their bankruptcy petition on May 20, 2009. In their petition, the Debtors indicate that the funds which were used to pay off the loan came from Mr. Lambdin's I.R.A. account, which the Debtors did not claim as exempt property.

II.

The Trustee filed this adversary proceeding seeking to avoid the liens of The CIT Group, Ford Consumer Finance, and 21st Mortgage Corporation in the mobile home, and further seeking to recover the mortgage loan payoff amount as a preferential transfer made within ninety days of the Debtor's petition for bankruptcy relief. In its answer to the Trustee's complaint, 21st admits that it did not perfect its security interest in the mobile home by noting its lien on the certificate of title, and further admits that it received payment from the Debtors in the amount of $39,318.00. However, 21st denies that its security interest was void or voidable by the Trustee.

21st argues that the Debtors' payoff of the mortgage is not a voidable preference because it was done with retirement funds, which would be exempt property in the Debtors' bankruptcy case. It further argued that if the payoff was a preferential transfer, it is only voidable as to the value of

the mobile home, but not as to the real estate in which 21st properly perfected its interest. Lastly, 21st submits that if the Trustee is permitted recovery of the payoff funds as well as the authority to sell the mobile home, it will result in a double recovery for the Trustee.

The Trustee contends that the retirement funds were not exempt property because one the funds were removed from the retirement account the Debtors could use them as they chose, and that he chose to use them to pay off the loan. The Trustee further argues that he is not seeking a double recovery, but rather the amounts paid for, and to avoid an unperfected lien on, the mobile home.

On October 21, 2010, 21st filed a motion to continue the scheduled trial. This motion was denied because it was made five days before the trial in contravention of the order for trial which required such motions to be made at least twenty-one days before the trial date. Four days before the trial was to be held, counsel for 21st withdrew from his representation of 21st. At the trial, 21st's new counsel orally sought a continuance in order for 21st to obtain an appraisal of the real estate. However, discovery had ended long ago, the record was sufficiently set up for trial, and the parties had also agreed that the lien was not perfected on the mobile home and the only dispute concerned the value of the real estate. For these reasons, 21st's motion to continue was denied.

At trial, the Trustee called Samuel Godby, a real estate auctioneer and appraiser, as a witness. At the request of the Trustee, Mr. Godby had performed an appraisal of the real estate as it would be valued without the mobile home. His appraisal valued the real estate at $10,000.00. 21st called as its witness Christopher Caldwell, the head of the legal foreclosure and bankruptcy unit of 21st. Mr. Caldwell testified that 21s had contacted the Property Valuation Administration ("PVA") of Rockcastle County and received an appraisal of both the land and the mobile home for $45,000.00. Mr. Caldwell further testified that the current National Automobile Dealers Association ("NADA") value of the mobile home was $17,000.00. 21st posited that the by subtracting NADA value of the mobile home from the PVA appraisal for both the real estate and mobile home left a difference of $28,000.00 which should be attributed to the real estate. Neither party, however, had written reports of their valuations. Following the trial, the court took the matter under submission.

III.

Kentucky law prescribes that a creditor's interest in a mobile home may only be perfected if its lien is noted on the certificate of title. K.R.S. § 186(A).190(1) ("[T]he perfection and discharge of a security interest in any property for which has been issued a Kentucky certificate of title shall be by notation on the certificate of title."). Because 21st's lien is not noted on the mobile home's certificate of title, it is not perfected and may be subject to an avoidance action by the Trustee.

Notwithstanding its lack of perfection, 21st argues that the payoff by the Debtors was not a preferential transfer because it was paid with retirement funds. 21st contends that the transfer of funds which would otherwise be exempt (i.e., retirement funds) cannot be a voidable preference because there has been no diminution of the estate. Essentially, 21st argues that because other creditors could not have reached the retirement funds in bankruptcy, there has been no preferential transfer. It cites two cases in support of its contention, *Jarboe v. Treiber (In re Trieber)*, 92 B.R 930 (Bankr. N.D. Okla. 1988), and *Kapila v. Fornabaio (In re Fornabaio)*, 187 B.R. 780 (Bankr. S.D. Fla. 1995). Neither of these cases, however, are persuasive. Both "have been soundly criticized as adopting a 'no harm, no foul' rule." *See In re Hope*, 231 B.R. 403, n. 14 (Bankr. D. Col. 1999) (noting that such a rule is not contemplated by the Bankruptcy Code); *Tavenner v. Smoot*, 257 F.3d 401, 406 (4th Cir. 2001) (noting that "[a] majority of courts have rejected this approach . . . [because] a transfer of potentially exempt property could harm creditors because it might not have actually been exempted from the bankruptcy case."). But most importantly, neither case addressed whether a transferee has standing to assert a debtor's exemption in a preference action.

*In re Treiber* is based largely upon a Tenth Circuit decision that no longer has any effect. *In re Treiber* involved a trustee who sought to avoid an alleged preferential transfer by the debtor of his one-half interest in homestead property to his wife within one year of filing for bankruptcy protection. *In re Treiber*, 92 B.R. at 931. When the debtor filed his bankruptcy petition he claimed the residence as exempt property. *Id.* The trustee objected to the debtor's claim of exemption, alleging that the debtor had conveyed his interest to his wife and the debtor therefore had no interest to claim as exempt. *Id.* The trustee also filed a complaint against the debtor's wife for recovery of the preference. *Id.* The bankruptcy court determined that under Oklahoma law a debtor may convey his interest in a homestead, but still claim an exemption if he resides in the residence on the petition date. *Id.* at 933. Therefore, "even if the court were to hold that the conveyance was a voidable

4

preference and that the debtor had waived his homestead exemption because of the conveyance, the wife and family would still have the exemption which would be superior to the rights of the trustee." *Id.*

In reaching its decision, the court relied upon *Rutledge v. Johansen*, 270 F.2d 881 (10th Cir. 1959), wherein the Tenth Circuit held that a preferential transfer of homestead property was nonvoidable because the property transferred was exempt under Oklahoma law. The Tenth Circuit stated:

> The trial court's judgment is directly supported by textbook law to the effect that a transfer of exempt property of a debtor, though it is to a creditor and to apply on an antecedent indebtedness, does not give rise to a voidable preference.
>
> . . .
>
> For to hold otherwise would afford creditors a right in exempt property prior to bankruptcy which the law does not give them at the time of the filing or after adjudication. And it would deny to the bankrupt the right to accomplish before bankruptcy that which he could clearly do after bankruptcy. Surely, if a bankrupt is entitled to have exempt property of which he is seized at the time of the filing of the bankruptcy set apart from the bankruptcy estate, he is entitled to make a valid transfer of it prior to the date of the filing. This view accords the bankrupt his full right under the exemption laws, while at the same time preserving to the trustee the right to challenge the exempt character of the transferred property in proceedings like these.

*Id.* at 882-83. *Rutledge,* however, no longer has any effect. *See In re Taylor*, 226 B.R. 284 n. 2 (B.A.P. 10th Cir. 1998) (In *Rutledge*, the "court held under the Bankruptcy Act that exempt property may not be subject to avoidance under preference law. . . . [H]owever, the law has changed under the Bankruptcy Code in that exempt property is no longer excluded from the bankruptcy estate as it was under the Bankruptcy Act. Accordingly, *Rutledge* no longer has any effect.").

Both *In re Treiber* and *In re Fornabaio* can be distinguished because they involved the transfer of the debtor's interest in homestead property. They did not involve potentially exempt property being sold or cashed out with the proceeds being used to pay off an antecedent debt, as is

5

the case in the immediate matter. Once the funds were removed from Mr. Lambdin's I.R.A. account, they were no longer exempt property. The Debtors controlled how the funds could be used and whether to apply it to the payoff amount. Accordingly, the funds are not be considered exempt property.

Lastly, 21st does not have standing to assert the Debtors' exemption. In *Fox v. Smoker (In re Noblit)*, 72 F.3d 757 (9th Cir. 1995), a trustee filed a complaint to avoid a preferential transfer from proceeds of the sale of the debtor's residence which the debtor had transferred to a creditor thirty-five days before the filing of her petition. *Id.* at 758. The creditors argued that if the debtor had kept the property for herself, it would not have become part of the bankruptcy estate because it was exempt property. *Id*. The question before the Ninth Circuit was whether a creditor has standing to raise the exemption. *Id*. The court held that exemptions are "provided only for the benefit of the debtor. If the exempt property is transferred, the debtor has in essence waived the exemption, and the transferee cannot avail herself of the exemption in a subsequent avoidance action." *Id*. (citations omitted). The court concluded that the creditors did not have standing to raise the debtor's homestead exemption as a defense against the trustee's avoidance action. *Id*.

Other courts have similarly held that "it is well established that exemptions are personal to the debtor and may not be asserted by a creditor as a defense to an avoidance action." *In re Taylor*, 226 B.R. at *2 (citing *In re Norbit*, 72 F.3d at n. 1); *see also In re Richards*, 92 B.R. 369 (Bankr. N.D. Ind. 1988); *Waldschmidt v. Sanders (In re Sanders),* 213 B.R. 324, 329-30 (Bankr. M.D. Tenn. 1997). One of these courts reasoned:

> To permit a creditor to raise the issue of exemptability [sic], as a defense to a preference, would violate both the nature and theory of exemptions. The opportunity

>to claim an exemption would no longer be personal to the debtor, neither would it exist only for his benefit. Instead, the right would be shared by the debtor with certain creditors and would exist for the benefit of the debtor and certain preferred creditors. Furthermore, the purpose of an exemption is to keep property out of the hands of a creditor.

*In re Richards*, 92 B.R. at 372.

To allow 21st to assert the Debtors' exemption would be contrary to the purpose of the exemption: to keep property out of the hands of a creditor. The exemption is personal to the Debtors, and exists only for their benefit. Furthermore, the Debtors have not even claimed the I.R.A. fund as exempt property in their schedules. To allow 21st to now claim it as exempt would grant 21st the power to exercise an exemption after the Debtors chose not to. Accordingly, the payoff funds were not exempt property and 21st does not have standing to assert the exemption.

With respect to the payoff of the mobile home, all of the elements of a preferential transfer have been satisfied. Section 547 requires the following to occur for a transfer to be deemed preferential:

> 1) The transfer must be of an interest of the debtor in property to or for the benefit of a creditor;
> 2) It must be made on an antecedent debt;
> 3) It must be made while the debtor was insolvent;
> 4) It must enable the creditor to receive more than it would in the Debtors' chapter 7 bankruptcy.

11 U.S.C. § 547(b). Because 21st did not perfect its security interest in the mobile home by noting its lien on the certificate of title, the payoff amount it received that was applied to the mobile home allowed it to receive more than would have received in the Debtors' chapter 7 bankruptcy. The payment was made within ninety days of the Debtors' filing, and therefore there is a presumption of insolvency under § 547(b)(4)(A). It was also made on an antecedent debt for the benefit of 21st.

The payoff of the mortgage loan was clearly a preferential transfer for which 21st does not meet any of the exceptions under § 547(c).

IV.

Because the payoff of the mortgage loan is preferential with respect to the mobile home, the second issue is how much of the payoff should be allocated to the real estate on which 21st's lien was properly perfected. No preferential payment occurred as to the real estate because, unlike its interest in the mobile home, 21st's secured interest in the real estate was properly perfected. For a transfer to be preferential under § 547(b), the creditor must receive more than it would have in the debtor's chapter 7 bankruptcy. Because 21st was fully secured as to the real estate, it had first priority and would have received its full value. Therefore, no preference has occurred as to the real estate.

Although there is no dispute as to the validity or perfection of 21st's lien on the real estate, the value of the mobile home and real estate at the time of the payoff is disputed. The appraisal provided by the Trustee at trial valued the real estate at $10,000.000. 21st's valuation at trial was $28,000.00 for the real estate. There is also, however, the appraisal performed in 2005 at the time the Debtors obtaining financing from The CIT Group. This appraisal was submitted on the record and valued the real estate at $15,000.00. The court is therefore left to determine which of the three values provided should be assigned to the real estate.

In its trial brief, 21st states that it planned to call Mr. Caldwell as its witness, yet referred to him as "general counsel" for 21st. At trial, it was revealed that Mr. Caldwell was not an attorney,

8

but rather a law student who is the head of 21st's legal foreclosure and bankruptcy department. Mr. Caldwell had never seen the Debtors' property, had not performed an appraisal, and was not qualified to appraise the property beyond his employment experience with 21st. Furthermore, Mr. Caldwell's valuation was based only on the NADA and PVA values. The court, therefore, finds that Mr. Caldwell does not qualify as an expert witness regarding the value of the real estate. Accordingly, the $28,000.00 value 21st attributes to the real estate will not be considered.

Similarly, the appraisal provided by the Trustee will not be considered. In performing his appraisal, Mr. Godby merely drove to the property and determined by merely viewing it that it would should be valued at $10,000.00. In reaching this conclusion, Mr. Godby did not perform an analysis of comparable properties or sales, did not contact the PVA to determine the tax value of the real estate, and only provided his appraisal orally to the Trustee. No written report was provided.

The court therefore finds that the most credible valuation of the real estate is the written appraisal report which was performed in 2005. This appraisal values the real estate, independent of the mobile home, at $15,000.00. The report is in a standard form for an appraisal which is provided to a lender and contains an analysis of comparable properties. Therefore, the report is more credible than the appraisal performed by Mr. Godby, and provides a more accurate estimation of the real estate's value.     Based upon this finding, the court finds that the extent of 21st's lien on the real estate is $15,000.00.

Lastly, the third issue raised by 21st is without merit. 21st argues that if the Trustee is permitted to recover the preferential transfer, he will be able to receive a double recovery when he sells the mobile home. Clearly, there are two parts to the Trustee's cause of action: the preference,

and avoiding the lien on the mobile home. There has been a preferential payment as to the mobile home. This money should have been held by the debtor and claimed as exempt. However, the Debtors made the mistake of cashing out the potentially exempt property and using it to commit a preferential transfer. This issue is independent of the perfection issue on the mobile home. The certificate of title does not note the lien, so it can be avoided. This is not a double recovery, but rather two separate actions.

V.

Having determined that the funds used to pay off the mortgage were not exempt, and further finding that the value of the real estate is $15,000.00, an order will be entered in accordance with the foregoing, decreeing the payoff made by the Debtors to 21st was a preferential transfer for the mobile home and allowing the Trustee to recover the payment made, and further preserving the payment for the benefit of the Debtors' bankruptcy estate. A separate judgment order will be entered in favor of the Trustee against 21st for the preferential transfer in the amount of $24,318.00, representing the difference between the $39,318.00 payoff amount and the $15,000.00 value of the real estate.

Copies to:

Maxie E. Higgason, Esq.
G. Michael Cain, Esq. PO Box 1100, Frankfort, KY 40602-1100 (service by U.S. mail)
Christopher M. Hill, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge**
**Dated: Tuesday, November 09, 2010**
**(jms)**